UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACK EBE, MICHAEL BROWN,
and RICK LIMBAUGH, for themselves and others
similarly-situated, and
THE INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, AFL-CIO CLC (UAW);

       Plaintiffs,

v.

JOHNSON CONTROLS INC.

       Defendant

**COMPLAINT AND JURY DEMAND**

1. Plaintiffs Jack Ebe, Michael Brown, Rick Limbaugh, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, CLC ("UAW") bring this action as putative class representatives against Johnson Controls Inc. ("JC") to enforce collectively bargained promises of lifetime family healthcare and other insurance benefits for approximately 50 surviving retirees from the Defendant's now-closed Owosso, Michigan facility.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction to enforce collectively-bargained retiree healthcare promises, and over this action, under (1) the Labor-Management Relations Act (LMRA") Section 301, 29 U.S.C. Sec. 185; (2) the Employee Retirement Income Security Act ("ERISA")

Section 502, 29 U.S.C. Secs. 1132(a)(1)(B), (a)(3), (e), and (f); and (3) 28 U.S.C. Secs. 1331 and 1337.

3. Venue is proper in this district, under 29 U.S.C. Sec. 185(a) and 29 U.S.C. Secs. 1132 (e)(2)and (f), where (1) JC is headquartered and does business, (2) benefits implicated in this action are, or were, administered by JC; and (3) the breaches and ERISA violations that are the subject of complaint occurred.

## THE PARTIES

4. Plaintiff and putative class representative Jack Ebe started working for JC in 1964 at the Owosso plant where he was a member of UAW's Local 754. As putative class representative, Ebe is similarly situated to the putative class members. Ebe retired after thirty (30) years of service in 1994. Pursuant to the Plant Shutdown Memorandum of Agreement ("Shutdown Agreement") between the UAW and JC, dated November 18, 1994, Ebe received healthcare from JC under the Cluster 194 plan offered by Blue Cross and Blue Shield of Michigan.

5. Plaintiff and putative class representative Michael Brown started working for JC in 1962 at the Owosso plant where he was a member of UAW's Local 754. As putative class representative, Brown is similarly situated to the putative class members. He retired after thirty-two (32) years of service in 1994, and pursuant to the Shutdown Agreement between the UAW and JC, dated November 18, 1994, Brown received healthcare from JC under the Cluster 194 plan offered by Blue Cross and Blue Shield of Michigan.

6. Plaintiff and putative class representative Rick Limbaugh started working for JC in 1964 at the Owosso plant where he was a member of UAW Local 754 and also served on the union's bargaining committee for twenty years. As putative class representative, Limbaugh is

similarly situated to the putative class members. He retired after thirty years of service in 1994, and pursuant to the Shutdown Agreement between the UAW and JC, dated November 18, 1994, Limbaugh received healthcare from JC under the Cluster 194 plan offered by Blue Cross and Blue Shield of Michigan.

7. Plaintiff UAW is a labor union representing workers in industries affecting commerce within the meaning of 29 U.S.C. Secs. 142, 152, and 185. UAW is headquartered in Detroit, Michigan has offices throughout the United States, and represents employees in this district. UAW represented the production and maintenance employees at the Owosso plant and was a party to labor agreements governing the terms and conditions of employment for bargaining unit members and was also a party to the Shutdown Agreement which established compensation and benefits for retired, separated, and retiring employees of the Owosso plant.

8. Defendant JC is an Irish-domiciled American corporation with North American Corporate Headquarters located at 57557 N. Green Bay Avenue, P.O. Box 591, Milwaukee, WI 53201.

9. JC is an employer engaged in interstate commerce within the meaning of 29 U.S.C. Secs. 142, 152, and 185.

10. JC is engaged in manufacturing and service of building environment products, technologies, software, and services.

11. JC employs over 100,000 workers and has annual revenues exceeding $20 billion.

### FACTS

12. For a period of years through and including 1995, UAW and JC were parties to collective bargaining agreements ("CBAs") governing the terms and conditions of employment for workers at JC's Owosso plant.

13. In 1994, the UAW and JC negotiated the Shutdown Agreement in 1994 governing compensation and benefits for retirees from the Owosso plant, as well as for workers facing the prospect of a separation of employment due to the shutdown of the Owosso plant. The Shutdown Agreement promised company-paid healthcare to eligible Owosso plant employees retiring prior to May 1, 1995, including retirees, the retirees' spouses, other eligible dependents, and surviving spouses. Unlike the parties' CBA, the Shutdown Agreement had no expiration date or specified duration.

14. Specifically, Section 4( c ) of the Shutdown Agreement promised that all Owosso bargaining unit employees who retired by May 1, 1995 or pursuant to early retirement options under the Shutdown Agreement would:

> "continue to receive retirement insurance benefits notwithstanding the termination of the Collective Bargaining Agreement, except that commencing May 1, 1995 and thereafter such benefits shall be provided at Company expense to these retirees and their spouses and dependents under the Cluster 194 plan offered by the Blue Cross and Blue Shield of Michigan. Both before and after the May 1, 1995 transition to the new Cluster 194 plan offered by Blue Cross and Blue Shield of Michigan, the benefit levels with respect to the insurance benefits provided to these retirees and their spouses and dependents shall remain the same as they were for retirees, spouses, and dependents on November 1, 1994."

15. The Shutdown Agreement, at Section 11, also provided bargaining unit employees with a severance payout based upon months of service. Section 11(B) provided that upon the severance payout employees signed a "Shutdown Waiver of Rights" which terminated the employment relationship between JC and the released bargaining unit employees, "except that the employee shall thereafter continue to enjoy his/her (i) rights under the Pension Plan, (ii) right to retirement insurance (if retired on or before May 1, 1995 or under the provisions of Section 3(B) or D(ii) above, and (iii) any remaining rights under this Memorandum."

16.     Unlike the parties' CBAs, the Shutdown Agreement contained no expiration date, and the parties clearly intended the rights under it to continue indefinitely for the life of the retirees.

17.     In the wake of the 1995 closing of the Owosso plant, approximately 250 retirees from the bargaining unit began to receive retirement health insurance in the Cluster 194 Plant as promised under the Shutdown Agreement. JC continued to provide healthcare to Ebe, Brown, Rappuhn, Horn, Horn, Fett and other JC-Owosso retirees, and to the retirees' spouses, other eligible dependents, and surviving spouses, and did so until January 1, 2020.

18.     On or around October 30, 2020, JC advised the Owosso plant retirees that their medical, vision, and prescription drug coverage in the Cluster 194 Plan would end on December 31, 2020, and be replaced by a Health Reimbursement Account (HRA) administered by Mercer Marketplace 365. This modification substantially reduced the retirees' and their spouses and dependents' benefits and is neither substantially commensurate with the benefits provided to these retirees and their spouses and dependents on November 1, 1994.

19.     The Owosso retirees did not consent to termination of their healthcare coverage under the Cluster 194 plan.

20.     The UAW did not consent to termination of the retirees' healthcare coverage under the Cluster 194 plan.

21.     The three putative class representatives – Ebe, Brown, and Limbaugh -- bring this ERISA/LMRA action for themselves and on behalf of similarly situated retirees and the retirees' spouses, other eligible dependents, and surviving spouses under Fed. R. Civ P. 23(a) and (b) (1) and (b) (2). The putative class members are all similarly situated to the three putative class representatives Ebe, Brown, and Limbaugh.

22. The class consists of employees who retired from the JC Owosso plant prior to the 1995 closing or to those released employees who retired pursuant to the Plant Shutdown Agreement, all of whom are eligible to receive company-provided healthcare and the retirees' spouses, other eligible dependents, and surviving spouses who received, or who were eligible to receive company-provided benefits.

23. All class members were, and continue to be, entitled to healthcare under the Plant Shutdown Agreement.

24. All class members received, or are eligible for healthcare provided by JC under the Shutdown Agreement.

25. The class includes approximately 50 surviving retirees and surviving spouses who received healthcare benefits under the Shutdown Agreement, and an unknown number of other participants and participants' spouses, other eligible dependents, and surviving spouses.

26. The class is so numerous that joinder of all class members is impracticable.

27. There are questions of law and fact common to the class, including questions about the lawfulness under ERISA/LMRA of defendant's unilateral termination of the collectively-bargained healthcare.

28. Ebe, Brown and Limbaugh have claims typical of those of the class, as all the claims arise under the collectively bargained Shutdown Agreement and the ERISA-regulated welfare benefit plan and healthcare program covering JC Owosso retirees and their spouses, other eligible dependents, and surviving spouses.

29. The three putative class representative's claims address CBA breaches and ERISA-LMRA violations, which affect and harm all class members.

30. Ebe, Brown and Limbaugh will fairly and adequately protect the class because they have (1) the same claims and interests as other members of the class, arising out of the same facts and law and Shutdown Agreement and welfare benefit plan; (2) retained attorneys knowledgeable and experienced in ERISA.LMRA retiree healthcare class action litigation; and (3) joined with and secured the support of UAW in their efforts to enforce the collectively-bargained promises of retiree healthcare.

31. Defendant's termination of healthcare adversely affects all class members so that injunctive and other class-wide relief is appropriate and a class action will avoid the burden, expense, and risks of inconsistent adjudications of individual claims.

## COUNT I – BREACH OF SHUTDOWN AGREEMENT

32. Paragraphs 1-33 are incorporated in this count.

33. The collectively-bargained Shutdown Agreement is binding on the Defendant.

34. The collectively-bargained Shutdown Agreement creates vested rights to lifetime healthcare for Ebe, Brown and Limbaugh, and the other class members.

35. Defendant is obligated by the Shutdown Agreement to provide lifetime healthcare to Ebe, Brown, and Limbaugh, and the other class members.

36. Defendant's January 1, 2021 termination of the Cluster 194 plan providing retiree healthcare breached the Shutdown Agreement.

37. Defendant terminated the retiree healthcare without the consent of the affected retirees and without the consent of the UAW.

38. Defendant's termination of the retiree healthcare caused, and continues to cause, damage and harm to Ebe, Brown, Limbaugh, the other class members and the UAW.

39. Defendants is liable to Ebe, Brown, Limbaugh, other class members, and the UAW for termination of the retiree healthcare and contract breaches.

## COUNT II – BREACH OF PLAN AND ERISA VIOLATION

40. Paragraphs 1-33 are incorporated in this count.

41. The collectively-bargained promises of retiree healthcare made to the Owosso plant retirees and their families constitute a welfare benefit plan (the "plan") within the meaning of ERISA, 29 U.S.C. Sec. 1002(1).

42. The plan promises company-paid lifetime healthcare to Ebe, Brown, Limbaugh, and the other class members.

43. Ebe, Brown, Limbaugh, and other class members are, or were, participants in, or beneficiaries of, the plan within the meaning of ERISA, 29 U.S.C. Secs. 1002(7) and (8). Under the plan, each retiree's right to company-supported family healthcare vested at the time of retirement and is to continue for that retiree's lifetime and for the lifetime of that retiree's surviving spouse.

44. The defendant is, or was, a plan sponsor and administrator of the plan within the meaning of 29 U.S.C., Secs. 1002(16)(A) and (B). Defendant terminated retiree healthcare without the consent of the affected retirees and without the consent of the UAW.

45. Defendant wrongfully terminated the plan without the consent of the affected retirees and without the consent of the UAW.

46. Defendant's termination of retiree healthcare violated defendant's obligations under ERISA, 29 U.S.C. Secs. 1132, (a)(1)(B) and (a).

47. Defendant's termination of retiree healthcare caused, and continues to cause, damage and harm to Ebe, Brown, Limbaugh and to other class members.

48. Defendant is liable to Ebe, Brown, Limbaugh and to other class members for wrongful termination of healthcare under the plan.

## RELIEF

Plaintiffs ask the Court to:

A. Certify the class, appoint Ebe, Brown, and Limbaugh as class representatives, and appoint their counsel as staff counsel;

B. Declare that defendant's termination of retiree healthcare breached the Shutdown Agreement;

C. Declare that defendant's termination of retiree healthcare breached the collectively-bargained welfare benefit plan and violated ERISA;

D. Issue its injunction directing defendant to satisfy their contractual and statutory duties to provide retiree healthcare and to restore and maintain and comply with the welfare benefit plan in effect before January 1, 2021;

E. Direct defendant to reimburse and "make whole" each plaintiff and class member for all expenses, losses, bills, insurance premiums, injury, anxiety and distress, and other damages and harm caused by termination of their retiree healthcare;

F. Direct defendant to pay interest on all "make whole" damages;

G. Direct defendant to pay all costs and expenses incurred by plaintiffs, the class, class members, and class counsel in the prosecution of this action;

H. Direct defendant to pay plaintiffs' and class counsel's attorney fees at market rates as measures by fees in similar ERISA/FMLA litigation;

I. Direct defendant to pay such other compensatory, punitive, and exemplary damages as may be warranted; and

J. Award such other relief as may be warranted by law and equity.

HAWKS QUINDEL, S.C.

/s/ Richard Saks_____
Richard Saks (WI SBN 1022048)
222 E. Erie St., Ste. 210
Milwaukee, WI 53201-0442
414 271-8650
rsaks@hq-law.com

William E. Parsons (WI SBN 1048594)
409 E. Main St.
Madison, WI 53703
608 257-0400
wparsons@hq-law.com